(No. 95-CC-3031—)

BOB HANEY d/b/a HANEY FARM CENTER, Claimant, *v.*
ILLINOIS DEVELOPMENT FINANCE AUTHORITY, Respondent.

*Opinion filed October 21, 1998.*

EDDIE J. MINTON, for Claimant.

LAURA GRANDY and T. BRADFORD WALTRIP, for Respondent.

## ORDER ON MOTIONS

EPSTEIN, J.

This case arises out of an aborted loan/equipment lease from the Respondent, Illinois Development Finance Authority ("IDFA"), to the Claimant, Bob Haney ("Haney"), and is pending on Claimant's two-count complaint, which asserts breach of contract (Count I) and breach of fiduciary duty (Count II) claims seeking $500,900 in damages.

## The Pending Motions

This case now comes before the Court on a flurry of motions and the response or objection to each of these motions by the other party:

(1) Respondent's "Motion for Judgment on the Pleadings or [alternatively] * * * for Partial Summary Judgment" (the "motion for judgment");

(2) Claimant's "Motion for Finding * * * that * * * §18 of * * * 'Equipment Lease' was Unconscionable * * * pursuant to §5/2A—108(1) of the Uniform Commercial Code * * *; or * * * to Present Evidence as to the Setting, Purpose, and Effect of the Lease Contract * * * pursuant to §5/2A—108(3) * * *" (the "unconscionability motion");

(3) Claimant's "Motion to Amend Complaint," which seeks leave to file an amended 3-count complaint asserting two breach of contract actions (Counts I and II), and a breach of fiduciary duties action (Count III) (the "motion to amend"); and

(4) Respondent's "Motion for Stay of Ruling on * * * [the Motion to Amend] * * * until Court Rules on the * * * Motion for Judgment * * *" ("Motion to Stay Ruling").

## Discussion

The Respondent's motion for judgment asserts a failure of Counts I (breach of lease agreement) and II (breach of fiduciary duty) to state causes of action, and asserts section 2 of the Credit Agreements Act (the "CAA") (815 ILCS 160/2) as a bar to the Count I claim, based on the failure of the alleged contract to comply with the two-signature requirement of section 2 of the CAA; to which the Claimant replies that the CAA is inapplicable to the lease alleged in Count I.

The Claimant opposes the motion, but also moved for leave to file an amended complaint that appears to re-plead the original Counts I and II as amended Counts I and III and that would add a new Count II, which is a different contract claim than Count I. Ordinarily under our liberal pleading practice, we would grant such leave at this juncture, thus mooting the original complaint and motion and recommencing with the new pleading. How-ever, because it appears that Claimant is standing on the actions asserted in Counts I and II, and that the issues raised by the motion for judgment would apply equally or similarly to amended Counts I and III, we will entertain the motion for judgment along with the motion to amend in an effort to avoid circuity.

### Count I—Breach of Lease or of Contract to Make a Lease

Count I is a breach of contract action, based on a "lease agreement" which is alleged to be or to be embod-ied in an IDFA staff memorandum (on the Claimant's re-quest for commercial lease/financing) that the IDFA Board approved on October 20, 1993. (Complaint, Count I, par. 5; amended complaint, Count I, pars. 15, 16, 20.) Essentially, Claimant alleges that the agreement was for the Respondent IDFA to purchase certain identified equipment for $74,000 and to lease it to Claimant for five years on agreed financial terms; and that Respondent breached the agreement by failing to purchase the equip-ment—or by failing to timely order and purchase the equipment "during the time period in which [it] * * * cost $74,000" (Complaint, par. 29)—and then failing to lease it to Claimant, thus wrongfully aborting the transaction.

Respondent points out the admitted fact that the par-ties did execute a written lease among the "financing doc-uments" that were executed in April, 1994, approximately

six months after the October, 1993 IDFA Board approval on which Claimant relies. Respondent insists, *inter alia*, that the October 1993 Board action was not itself a lease, and that if it were a contract, it is a "credit agreement" within the meaning of the Credit Agreements Act (the "C.A.A.") and that Claimant's action based on it is barred because the October, 1993 board action, including the approved memorandum, were not signed by both parties as required by section 2 of the C.A.A.

Claimant replies with the vehement but unexplained and unprecedented contention that the arrangement was a commercial lease that is governed by section 2A—201 of the Uniform Commercial Code (the "U.C.C.") (810 ILCS 5/2A—201) *instead of* the C.A.A.; *i.e.*, that the C.A.A. cannot apply to a lease.

Initially we must reject the Claimant's statutory argument and its characterization of the October 1993 IDFA Board approval. A commercial lease may be subject to *both* the U.C.C. and the C.A.A. under appropriate circumstances; these are not either/or statutes nor do they apply to mutually exclusive categories. Equally plainly, the IDFA board approval was not itself a lease, as Claimant urges. If that approval was an enforceable commitment at all, which we assume *arguendo* (as that is unchallenged), it is clear that at best the agreement at that point was an agreement to enter into a lease, rather than a lease itself.

It is also clear that the purpose and function of the contemplated "commercial lease" was to provide financing assistance (*i.e.*, "credit") to the Claimant. Indeed, this is not disputed. Financing was the primary purpose of this transaction. The lease was proposed by Claimant in order to obtain financing for his acquisition of certain equipment to expand his business; the credit was to be effectuated by the financial terms of the equipment lease. We do not find

it terribly relevant, despite the Respondent's emphasis, that it was the Claimant who first proposed the "equipment lease" structure for the transaction. But Claimant's reliance on the technical lease form of the transaction is fundamentally erroneous, in light of the governing statutory language (section 12 of the C.A.A.), which defines a "credit agreement" as follows:

"'Credit agreement' means an agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money not primarily for personal, family or household purposes, and not in connection with * * * credit cards." 815 ILCS 160/1(2).

The credit-extension purpose and function of this transaction bring it under the C.A.A. definition of a "credit agreement," irrespective of the lease form of the transaction. Thus, we are constrained to hold that the alleged "agreement" or "commitment" of the IDFA to enter into this credit-extending commercial lease is subject to the C.A.A. (We presume, and nobody has argued otherwise, that the IDFA is an "entity" within section 1(4) of the C.A.A. and that it is "engaged in the business of lending money or extending credit" within section 1(2) of the C.A.A.

The requirement of section 2 of the C.A.A., which is a kind of super statute of frauds for credit agreements, are as follows:

"Sec. 2. Credit agreements to be in writing. A debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." (Emphasis added.) 815 ILCS 160/2.

The contract or commitment alleged in Count I is not signed by both parties; hence Claimant is barred from maintaining a claim upon it. Count I must therefore be dismissed with prejudice. Because Count I of the proposed amended complaint is also based on the same unexecuted arrangement for the lease/financing, and would also be

barred by section 2 of the C.A.A., we will not grant leave to file Count I of the amended complaint.

## Count II

In Count II, Claimant asserts a breach of fiduciary duty. The asserted fiduciary duty to the Claimant is predicated on the duties and purposes assigned to the IDFA by its enabling statute, the Illinois Development Finance Authority Act (20 ILCS 3505/1 *et seq.*). (See also Complaint, Count III, pars. 64, 65.) Similarly, the proposed amended complaint, *inter alia*, reasserts this statutory basis of the fiduciary duty. (See proposed Amended Complaint, Count III, par. 117.) Count II alleges that this fiduciary duty was breached in that the IDFA (See Complaint, par. 67):

"failed to carry out [its legislative] mandate * * * but * * * created economic hardships for those whom it was created to help, * * * for the Claimant and for the economic welfare of * * * [his] community."

We observe that Count III of the proposed amended complaint, which is the amended version of the pending Count II of the complaint, is less specific in pleading the alleged breach. See proposed amended complaint, Count III, pars. 120-121.

Respondent argues that the legislative findings and declarations of policy in the IDFA Act, particularly section 2 (20 ILCS 3505/2) does not create a fiduciary duty on IDFA as a matter of law, although it cites no case law authority for the point.

Claimant replies, also without precedential authority, that (1) the statute imposes on the IDFA a "responsibility to help create a favorable climate for new and improved job opportunities for its citizens by encouraging the development of * * * businesses * * * within labor surplus areas of the state"; and (2) that a fiduciary duty also arose due to the "trust and confidence" reposed in IDFA by the Claimant in this case.

Our first task is to characterize the fiduciary claim of the pending complaint, which is less than precisely pleaded and, unsurprisingly, is opposed categorically. For two reasons, we take the fiduciary duty claim to assert a general fiduciary duty to the citizens of Illinois, or at least to the citizenry of "labor surplus areas" of the State.

First, the Claimant's pleading asserts a broad general duty, rather than a specific duty to IDFA applicants or to "approved" applicants or some narrower class. Although the Count II allegations incorporate by reference the earlier allegations about the IDFA board's approval of Claimant's financing/lease application, we do not read the claimed fiduciary duty to be predicated on the alleged board "approval" or on the alleged IDFA "contract" or "commitment" to this particular lease transaction, as is alleged in Count I.

Second, even if Claimant was merely unclear in his pleading, we conclude that the theory of an actionable "fiduciary duty" arising from IDFA's alleged financing commitment/contract is also barred by section 2 of the C.A.A., which bars "an action on or in any way related to a credit agreement" that is not fully executed. This statutory bar applies to "an action." It is not limited to contract actions; the statutory language must encompass a claim based on a fiduciary duty that arises out of a "credit agreement." Of course, if there is an independent alternative source for the fiduciary duty, the C.A.A. may be immaterial. Moreover, if a Claimant could sidestep the bar of the statute by characterizing a contract claim as a fiduciary duty claim—*i.e.*, by asserting fiduciary duties as well as mere contract duties arising out of a contract—Claimants could evade the C.A.A. in most if not all financing cases, which would largely eviscerate the statute.

Thus we are left to consider the plain, generalized meaning of Claimant's asserted fiduciary duty, which he

finds in the statutory findings and policies of the IDFA Act. This Court cannot find a "fiduciary duty" to citizens generally or to citizens of qualified areas or to anyone else in this statute. Moreover, and more to the point (although neither party has argued it), we cannot find any legislative intent nor any basis in the statutory language for the implication of a statutory private right of action for violations of the IDFA Act, which is what Claimant's Count II-action ultimately purports to be insofar as it relies on the IDFA. See *Farrell v. State* (1997), 52 Ill. Ct. Cl. 275 and cases cited therein.

This brings us to Claimant's last effort to salvage a breach of fiduciary duty claim in this case, when he argues a fiduciary relationship *in fact*, based on his trust and confidence in the IDFA. There are three immediately apparent problems with this theory as now advanced: First, it is not pleaded in Count II of the complaint, and thus is not properly before us. Second, although it is pleaded in Count III of the proposed amended complaint, it is pleaded there in a purely conclusory form without any underlying factual allegations on which a "trust and confidence" conclusion might be based, which is inadequate. Third, because any claim of "trust and confidence" cannot be predicated to arise out of or to be "in any way related to" (C.A.A., section 2) a contract or commitment by the IDFA to finance the Claimant (unless a fully executed one is alleged), there is no factual basis alleged in either pleading for a fiduciary relationship.

However, the Court cannot say that it is impossible to plead such a fact-based fiduciary relationship, particularly in light of the allegations that the IDFA's own regulations imposed a six-month limit on the consummation of this lease/financing and that the IDFA engaged in willful and fraudulent delay. Accordingly, we will dismiss

Count II without prejudice; but will not allow the filing of the proposed amended Count III which does not appear to cure the defects in the original Count II; and we will allow the Claimant, if he elects, to file another amended count III in yet another pleading to attempt to state an action on the theory of a fiduciary duty arising on the basis of the parties' factual relationship.

## The Proposed Amended Complaint

For the foregoing reasons, the Court will not allow the filing of Counts I and III of the proposed amended complaint. However, there is no objection to the proposed amended Count II (breach of contract based on the executed lease agreement), which we will allow in substance but, in order to avoid confusion, not in form. We will grant the Claimant leave to file a second amended complaint, which may include the proposed amended Count II (contract based on executed lease) and an amended Count III (breach of fiduciary duty) consistent with this order.

## The Unconscionability Issue

Because of the imminent repleading, it is premature to entertain Claimant's unconscionability motion on its merits at this point. However, it must be noted that Claimant has now failed to set forth any factual basis for his conclusion of unconscionability of the provisions of section 18 ("Indemnity") of the IDFA-Claimant "Equipment Lease Agreement" (the limitation on "consequential or incidental damages"). Absent some allegations that properly raise the issue of unconscionability, the court must deny the motion in its entirety. We will deny the motion without prejudice, to permit the issue to be raised in the second amended complaint, which is where such an issue is best raised, or by later motion.

Because the section 18 contract issues are so clearly critical to this claim and must eventually be considered if these claims are repleaded, the Court notes, in passing, its observation that the text of section 18 of the Equipment Lease Agreement is ambiguous on its face in more than one respect. Both parties should address this provision carefully in their future pleadings.

## Order

For the foregoing reasons, it is now ordered:

1. Respondent's motion for judgment with respect to Count I of the original complaint is granted; and Count I is dismissed with prejudice;

2. The IDFA's motion for judgment with respect to Count II of the original complaint is granted; and Count II is dismissed without prejudice;

3. Claimant's motion to amend is denied with respect to Count I and Count III, and is granted with respect to Count II, subject to paragraph 4 of this order;

4. Claimant is granted leave to file Count II of the amended complaint (breach of contract based on the executed Equipment Lease) and an amended Count III (breach of fiduciary duty) as a second amended complaint within 35 days after this order is entered;

5. Claimant's unconscionability motion is denied without prejudice to raise in the amended pleadings and/or to renew by later motion.